# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| RICHARD CHUDACOFF, MD, | ) | 2:09-CV-01679-RCJ-(RJJ) |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, et al., | ) | |
| Defendants. | ) | |

After Defendants allegedly limited his medical privileges and issued a negative report to a national data bank, Plaintiff Richard M. Chudacoff, M.D. ("Plaintiff") sued Defendants alleging violations of his due process rights accompanied by several state-law claims. Presently before the Court is Defendant Dr. J. Dylan Curry's Motion to Dismiss (#29) and Renewed Motion to Dismiss (#55), and Defendants' Motion for Summary Judgment (#53). All motions have been fully briefed. (#32, 41, 60, 61, 67, 68, 69, 71). The Court heard oral argument on September 17, 2010. The Court now issues the following order. IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#29) is GRANTED, Defendant's Renewed Motion to Dismiss (#55) is GRANTED, and Defendants' Motion for Summary Judgment (#53) is GRANTED.

## I. BACKGROUND

### A. The Parties

Defendant University Medical Center of Southern Nevada ("UMC") was a county hospital doing business in Nevada. (3d Am. Compl. (#47) ¶¶ 3, 40). Defendants Steve

1

Sisolak, Tom Collins, Larry Brown, Lawrence Weekly, Chris Giunchigliani, Susan Brager, and Rory Reid (collectively, the "Board of Trustees") were county commissioners and members of the board of trustees of UMC. (*Id.* at ¶¶ 4–11). Defendant Kathleen Silver was the chief executive officer of UMC. (*Id.* at ¶ 15).

Defendant Medical and Dental Staff of UMC (the "Medical Staff") was a subdivision of UMC. (*See id.* at ¶ 12). The Medical Executive Committee (the "MEC") was a committee within the Medical Staff. (*Id.* at ¶ 14). Defendant John Ellerton, M.D., was chief of staff of the Medical Staff. (*Id.* at ¶ 16). Defendant Frederick J. Lippmann, M.D., was the chair of the Credentialing Committee of the Medical Staff. (*Id.* at ¶ 17). Defendants Jim Christiansen, M.D., Charles Bloom, M.D., Marietta Nelson, M.D., J. Dylan Curry, M.D., Kshama Daphtary, M.D., John Onyema, M.D., Beverly Neyland, M.D., Albert Capanna, M.D., Victor Grigoriev, M.D., Laura Bilodeau, M.D., Michael Casey, M.D., and Steven Becker, M.D., were members of the Medical Staff. (*Id.* at ¶¶ 18–23, 25–30).

Plaintiff was appointed as an assistant professor with the University of Nevada School of Medicine in 2007. (*Id.* at ¶ 48). On December 20, 2007, UMC granted Plaintiff staff privileges. (*Id.* at ¶ 50). From February 1, 2008, to May 28, 2008, Plaintiff worked at UMC providing clinical care and educational services. (*Id.* at ¶ 51).

**B.  Suspension of Plaintiff's privileges and report to National Practitioner's Data Bank**

On April 16, 2008, Plaintiff sent an e-mail to Paul M. Stumpf, M.D., Professor and Chair of Obstetrics and Gynecology at the University of Nevada School of Medicine, regarding his concern with the skills of the residents at UMC. (J. Reed's Order, 2:08-cv-863 (#229) 3:9–12). On May 28, 2008, Plaintiff received a letter from Chief of Staff Ellerton stating that the MEC had suspended, altered, or modified Plaintiff's medical staff privileges and ordering Plaintiff to undergo drug testing and physical and mental examinations. (*Id.* at 3:14–19). Plaintiff did not know that his privileges were being considered and, though the letter advised him of his right to a fair hearing, it did not notify him of the allegations against him. (*Id.* at 3:19–24).

///

On June 2, 2008, Plaintiff requested a fair hearing. (*Id.* at 3:24–25). On June 10, 2008, Plaintiff received a letter from Milton Glick, President of the University of Nevada-Reno, stating that Plaintiff's employment with the university had been terminated due to the suspension of his clinical privileges. (*Id.* at 3:25–4:2).

On June 16, 2008, Defendants filed a report with the National Practitioner Data Bank (the "NPDB") which stated that Plaintiff's privileges had been suspended indefinitely for substandard or inadequate care and skill. (3d Am. Compl. (#47) ¶ 52). The report indicated that Plaintiff caused four serious operative complications during surgery, Plaintiff failed to respond to a medical emergency, and that numerous complaints had been received regarding Plaintiff's disruptive behavior. (*Id.* at ¶ 53).

### C.  Plaintiff's first complaint in related case

On July 2, 2008, Plaintiff filed a complaint in the U.S. District Court for the District of Nevada against UMC, the Board of Trustees, the Medical Staff, Chief of Staff Ellerton, Marvin J. Bernstein, M.D., Dale Carrison, M.D., and Donald Roberts, M.D. (*See* J. Reed's Order, 2:08-cv-863 (#229) 4:16–18). Plaintiff alleged violations of his due process rights and several state-law claims. (*See* Compl., 2:08-cv-863 (#1)). Plaintiff amended his complaint on September 22, 2008, and January 6, 2009. (1st Am. Compl., 2:08-cv-863 (#46); 2d Am. Compl., 2:08-cv-863 (#82)).

### D.  First clinical hearing

On July 18, 2008, Plaintiff was informed that his fair hearing was scheduled for September 11, 2008. (J. Reed's Order, 2:08-cv-863 (#229) 4:18–19). The hearing was held on September 11, 2008, but Plaintiff was not given notice of the nature of the testimony against him and Plaintiff's attorney was not allowed to participate in the hearing in any substantive way. (*Id.* at 4:22–5:5). The hearing committee addressed Plaintiff's alleged substandard care and also a discrepancy in his original application to join the Medical Staff. (*Id.* at 5:6–8). Plaintiff had indicated that no adverse actions had been taken against him for his practice of medicine. (*Id.* at 5:9–10). In fact, Plaintiff received a negative report during his time in the Navy, but the District Court for the District of Columbia later revised the report. (*Id.*

at 5:10–12). Plaintiff had not been informed that this topic would be addressed. (*Id.* at 5:12–13). On October 1, 2008, the hearing committee recommended peer review of Plaintiff's practice, implementation of a zero-tolerance policy, drug testing, and physical and psychological examinations of Plaintiff. (*Id.* at 5:14–23). The hearing committee also noted that the MEC should specifically address the issue of Plaintiff's misrepresentation on his application. (*Id.* at 5:24–27).

### E. MEC review of first clinical hearing

On October 28, 2008, Plaintiff attended the MEC's hearing to consider the hearing committee's recommendations. (*Id.* at 6:1–7). Though the purpose of the hearing was to address the alleged incidents of Plaintiff's substandard care, at least one MEC member focused almost exclusively on Plaintiff's alleged falsification on his application. (*Id.* at 6:5–9). On November 7, 2008, the MEC sent two letters to Plaintiff. The first informed Plaintiff that the MEC adopted the hearing committee's recommendation regarding peer review of Plaintiff's work. The second suspended Plaintiff's privileges for material misstatements of fact on his application. (*Id.* at 6:10–18).

### F. Suspension of Plaintiff's privileges for misstatements on application

Plaintiff requested a fair hearing regarding his suspension based on the alleged misstatements of fact. (*Id.* at 7:1–3). On November 25, 2008, at 9:10 a.m., Plaintiff's attorney was informed that the MEC would meet at 12:30 p.m. to discuss the discrepancy in Plaintiff's application. (*Id.* at 7:3–5). The MEC informed Plaintiff that it would proceed with his suspension of privileges less than one hour after the hearing. (*Id.* at 7:5–7).

### G. Board of Trustees review of MEC actions

On November 25, 2008, Plaintiff appealed the MEC's adoption of the fair hearing committee's recommendations with respect to Plaintiff's alleged substandard care to the Board of Trustees. (J. Reed's Order, 2:08-cv-863 (#229) 7:8–11). Plaintiff also requested a fair hearing on the application issue. (*See* 3d Am. Compl. (#47) ¶ 54).

On December 8, 2008, Plaintiff, by letter, requested a time line for the hearings pursuant to the Fair Hearing Plan. (*Id.* at ¶¶ 54–55). On January 9, 2009, CEO Silver notified

4

1  Plaintiff that the appellate review was scheduled for January 20, 2009, before the Board of
2  Trustees and that the review pertained to the MEC's decision regarding Plaintiff's privileges
3  at UMC based on MEC's October 28, 2008, and November 25, 2008, meetings. (*Id.* at
4  ¶¶ 56–57). CEO Silver, however, did not inform Plaintiff of the scope of review. (*Id.* at ¶ 58).
5  In early 2009, the Board of Trustees required the MEC to reconsider its decision to report
6  Plaintiff to the NPDB. (J. Reed's Order, 2:08-cv-863 (#229) 7:11–15). On January 20, 2009,
7  the Board of Trustees ordered a second clinical fair hearing on the quality of care issue. (*Id.*
8  at ¶ 59). On January 27, 2009, Defendants sent Plaintiff an e-mail indicating that the second
9  clinical hearing was tentatively scheduled for March 5, 2009. (3d Am. Compl. (#47) ¶ 60).

10  On February 4, 2009, Plaintiff requested a fair hearing regarding the alleged
11  misrepresentation made on his application. (*Id.* at ¶ 61). Chief of Staff Ellerton, by letter,
12  notified Plaintiff that the hearing was scheduled for March 31, 2009, but did not set forth the
13  charges or establish the scope of review. (*Id.* at ¶¶ 62–63). Though the letter was dated
14  February 29, 2009, it was not postmarked until March 4, 2009. (*Id.* at ¶ 64). Plaintiff objected
15  to the notice as untimely. (*Id.* at ¶ 65).

16  **H.    Second clinical hearing**

17  Plaintiff participated in the second clinical hearing on March 5, 8, and 12 of 2009. (*Id.*
18  at ¶ 66). The hearing was conducted by Doctors Christensen, Bloom, Nelson, Curry,
19  Daphtary, and Onyema (collectively, the "Second Hearing Committee"). (*See id.* at ¶ 24).
20  Plaintiff alleges that he lacked advance knowledge of the specific charges or allegations to
21  prepare an adequate defense. (*Id.* at ¶¶ 67–68). Specifically, he alleges that he did not know
22  his ability to teach and supervise residents would be considered. (*Id.* at ¶ 69).

23  On March 13, 2009, the Second Hearing Committee recommended that administrative
24  restrictions be placed on Plaintiff's ability to teach and supervise residents. (*Id.* at ¶¶ 70–71).
25  The Second Hearing Committee did not otherwise recommend limiting Plaintiff's clinical
26  privileges. (*Id.* at ¶ 72).

27  **I.    Partial summary judgment for Plaintiff in related case**

28  On April 8, 2009, Judge Reed granted summary judgment in Plaintiff's favor on the

issue of whether the defendants violated his due process rights. (J. Reed's Order, 2:08-cv-863 (#106)). Judge Reed held that Plaintiff had not been given adequate notice and opportunity to be heard before his privileges were suspended and the report made to the NPDB. (J. Reed's Am. Order, 2:08-cv-863 (#109) 31:12-13). However, because the administrative procedures were ongoing, Judge Reed declined to craft a remedy for Plaintiff. (*Id.* at 31:18–20).

### J. MEC review of the second clinical hearing

On April 9, 2009, the MEC invited Plaintiff to participate in its review of the second clinical hearing. (3d Am. Compl. (#47) ¶ 73). Plaintiff attended the meeting to review the second clinical hearing on April 28, 2009. (*Id.* at ¶ 74). The MEC prohibited Plaintiff from supervising residents or students, subjected Plaintiff to review and monitoring going forward, and required Plaintiff to take a course regarding disruptive behavior. (*Id.* at ¶ 75). The MEC also decided to remove the statement that Plaintiff had substandard or inadequate skill from the report to the NPDB. (*Id.*).

Plaintiff requested appellate review. (*Id.* at ¶ 76). On May 7, 2009, the MEC notified Plaintiff, by letter, that it affirmed the findings of the second clinical hearing. (*Id.* at ¶ 77).

### K. Application hearing

Plaintiff appears to allege that Defendants knew he was unavailable the week of June 15th but scheduled review of the application issue for June 16th. (*Id.* at ¶ 79). Plaintiff made multiple attempts to reschedule, but was unsuccessful until about nine days prior to the hearing, when Defendants' counsel decided to postpone the hearing to July 2, 2009. (*Id.* at ¶¶ 80–83). Defendants only informed Plaintiff that the hearing would be about material misstatements that Plaintiff made on his application for privileges at UMC. (*Id.* at ¶¶ 84–85). Plaintiff tried to obtain clarification on the charges and the standard to be used, but was not satisfied with Defendants' responses. (*See id.* at ¶¶ 86–90, 95).

On June 22, 2009, Dr. Voss wrote a letter to the hearing chairperson stating that Plaintiff had not honestly and accurately completed his application. (*Id.* at ¶¶ 91–92). Plaintiff did not receive a copy of this letter until June 26, 2009. (*Id.* at ¶ 91). On June 29, 2009,

counsel for Defendants wrote a letter to Dr. Neyland, chair of the application hearing, related to allegations of misrepresentations on Plaintiff's credentialing application. (*Id.* at ¶ 96). On June 30, 2009, Chief of Staff Ellerton notified Plaintiff of three new witnesses for the hearing. (*Id.* at ¶¶ 97–99). One of the witnesses would not appear at the hearing, but his report would be submitted. (*Id.* at ¶ 100). The letter included reports by the witnesses and the reports were submitted to the hearing committee. (*See id.* at ¶¶ 100–01).

The hearing was held on July 2, 2009, by Doctors Neyland, Capanna, Grigoriev, Bilodeau, Casey, and Becker (collectively, the "Application Hearing Committee"). (*Id.* at ¶ 103). At the hearing, Dr. Lippmann testified that he was the chair of the credentials committee that reviewed Plaintiff's application and that the committee missed some information regarding Plaintiff's military record. (*Id.* at ¶ 104–07).

On the evening of the hearing, Defendants' counsel notified Plaintiff that appellate review would be held on July 21, 2009. (*Id.* at ¶ 108). This gave Plaintiff little time to prepare his appellate submissions. (*See id.* at ¶¶ 109–11). Plaintiff did not receive a complete and accurate copy of what Defendants submitted to the Board of Trustees. (*Id.* at ¶ 112). On the day before the appellate review, Defendants' counsel sent Plaintiff an e-mail with a WordPerfect document that lacked exhibits. (*Id.* at ¶ 113).

**L.   Board of Trustees review**

At the appellate review, Mr. Reid allowed Defendants to use exhibits. (*Id.* at ¶ 115). Plaintiff seemingly alleges that the Board of Trustees granted Dr. Giunchigliani's motion to accept the MEC's action. (*Id.* at ¶ 115). On August 10, 2009, Defendants filed a revised NPDB report consistent with the MEC's findings after the second hearing. (*Id.* at ¶ 118). Plaintiff is now unable to obtain credentials or privileges at the hospitals he has applied to in the United States. (*Id.* at ¶ 126).

**M.   Summary judgment for the defendants in related case**

On November 4, 2009, Judge Reed granted summary judgment for the defendants on all federal claims and declined to exercise continuing jurisdiction over the remaining state-law claim. (J. Reed's Order, 2:08-cv-863 (#229)). With respect to Plaintiff's constitutional claims,

Judge Reed found that: CEO Silver had no role in the deprivation of Plaintiff's due process rights, (*id.* at 17:12–13, 21:25–22:12); Plaintiff failed to offer any evidence that UMC or the Board of Trustees had a policy or practice that led to Plaintiff's constitutional deprivation or engaged in any deliberate misconduct, (*id.* at 20:23–21:10); and Plaintiff failed to offer evidence that shows the individual doctors and the Medical Staff acted under the color of state law, (*id.* at 22:18–24:2).

With respect to Plaintiff's defamation claims, Judge Reed found that Chief of Staff Ellerton published the statement to the NPDB on behalf of UMC pursuant to a statutory duty. (*Id.* at 26:3–4). Therefore, Judge Reed held that the publication was protected by a conditional privilege and that Plaintiff failed to offer any evidence of malice. (*Id.* at 26:3–27:7).

Judge Reed held that Plaintiff's negligence claim failed because it was based on alleged contractual duties. (*Id.* at 27:16–28:14). Because Plaintiff offered no evidence that he suffered physical injury or of outrageous conduct by a defendant, Judge Reed granted summary judgment in favor of the defendants on Plaintiff's claims for intentional and negligent infliction of emotional distress. (*Id.* at 28:15–29:14).

Judge Reed held that Nevada does not recognize a cause of action for negligent interference with prospective economic advantage. (*Id.* at 29:17–19). Because Plaintiff offered no evidence that a prospective economic advantage existed, the defendants intended to interfere with it, or that Plaintiff was actually harmed, Judge Reed granted summary judgment for the defendants on Plaintiff's claim for intentional interference with prospective economic advantage. (*Id.* at 30:13–26).

With respect to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, Judge Reed held that the individual physicians and the Medical Staff were not parties to a contract with Plaintiff. (*Id.* at 31:8–26). However, Judge Reed did not grant judgment for either party on the issue of UMC and the Board of Trustees' liability for breach of the implied covenant of good faith and fair dealing. (*Id.* at 37:5–7, 25–38:3).

**N.   Procedural history of this case**

On August 28, 2009, while Plaintiff's case was still pending before Judge Reed, Plaintiff

filed a complaint against Defendants in this Court. (Compl. (#1)). On September 23, 2009, UMC and the Board of Trustees moved the Court to strike Plaintiff's complaint or direct Plaintiff to file an amended complaint because Plaintiff's complaint was overly lengthy and filled with immaterial and redundant allegations. (Defs.' Mot. to Strike (#5)). On November 23, 2009, the Court orally granted the motion to strike and ordered Plaintiff to file an amended complaint. (Minutes (#22)). That same day, Plaintiff filed his first amended complaint. (Am. Compl. (#20)). On December 8, 2009, the Court entered a written order granting the motion to strike and allowing Plaintiff 15 days to file an amended complaint. (Order (#24)). On December 14, 2009, Plaintiff again filed an amended complaint. (Am. Compl. (#25)).

On December 31, 2009, all Defendants except Dr. Curry moved the Court to strike Plaintiff's amended complaint and order Plaintiff to amend his complaint on the same grounds as the prior motion to strike. (Defs.' Mot. to Strike (#28)). That same day, Dr. Curry filed a motion to dismiss Plaintiff's complaint against himself for failure to state a claim. (Def.'s Mot. to Dismiss (#29)). On March 15, 2010, the Court orally granted the new motion to strike and held its ruling on Dr. Curry's motion to dismiss in abeyance pending amendment of the complaint. (Minutes (#46)). On April 2, 2010, the Court entered a written order granting the motion to strike and allowing Plaintiff to file a second amended complaint within 15 days. (Order (#45)). On April 19, 2010, Plaintiff filed his second amended complaint, which he titled his third amended complaint. (3d Am. Compl. (#47)). On May 6, 2010, Dr. Curry and the other Defendants filed their answers. (Def.'s Ans. (#49); Defs.' Ans. (#50)).

On June 22, 2010, Defendants moved for summary judgment. (Defs.' Mot. for Summ. J. (#53); Def.'s Joinder (#54)). On June 28, 2010, Dr. Curry filed a renewed motion to dismiss for failure to state a claim. (Def.'s Mot. to Dismiss (#55)). On July 15, 2010, the remaining doctor defendants, Chief of Staff Ellerton and Doctors Lippmann, Christensen, Bloom, Nelson, Daphtary, Onyema, Neyland, Capanna, Grigoriev, Bilodeau, Casey, and Becker, joined Dr. Curry's renewed motion to dismiss (collectivley, with Dr. Curry, the "Doctor Defendants"). (Defs.' Joinder (#59)).

///

## II. LEGAL STANDARD

### A. Motion to Dismiss

A court must dismiss a cause of action that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). A court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds*, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### B. Motion for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no

dispute as to the material facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).

### III. ANALYSIS

Defendants move for dismissal and summary judgment. The doctrine of claim preclusion bars Plaintiff's due process claims against CEO Silver, UMC, the Board of Trustees, and the Medical Staff. The doctrine of issue preclusion bars Plaintiff's due process claims against the MEC and the Doctor Defendants. The remaining claims are all state-law claims. Therefore, the Court dismisses Plaintiff's due process claims with prejudice and dismisses all remaining state-law claims without prejudice.

**A.   Jurisdiction**

Defendants argue that this Court lacks jurisdiction to hear this case because Plaintiff's appeal in Judge Reed's case is pending. (Defs.' Mot. for Summ. J. (#53) 28:2–12). "Generally, after an appeal to an appellate court has been perfected in a civil case, a lower court is without jurisdiction to hear a case involving the same matter between the same parties." *Jones v. Belgum*, 770 N.W.2d 667, 668 (Neb. Ct. App. 2009). Defendant suggests that ana ppeal automatically deprives all courts of jurisdiction over related claims. The Court, however, reads the case law to hold only that an appeal divests the court from which the appeal is taken of jurisdiction. Therefore, this Court has jurisdiction to entertain Plaintiff's claims.

**B.   Preclusion doctrines**

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008). "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Id.* at 2171 n.4. It is not entirely clear which preclusion law—federal or state—to

11

apply to a federal court's judgment on state-law claims through its exercise of supplemental jurisdiction. *See* 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4466 (2d ed.) (noting that "[i]t may be argued that supplemental jurisdiction of state-created rights presents a stronger justification for following federal rules of res judicata" but postponing any conclusion on the matter). However, for purposes of this matter, any differences between federal and Nevada preclusion doctrine is immaterial.

There are two types of preclusion: claim preclusion and issue preclusion. *Taylor*, 128 S. Ct. at 2171.

### 1. Claim preclusion

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Nevada uses a three-part test, adopted from the majority of states and the federal courts, for determining whether claim preclusion applies: "(1) the parties or their privies are the same, (2) the final judgment is valid and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (footnotes omitted). With federal questions, claim preclusion bars the litigation of claims that were raised or could have been raised in a prior action. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). The doctrine applies when there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between the parties. *Id.*

Generally, claim and issue preclusion will not apply to one who was not a party to the first suit. *Taylor*, 128 S. Ct. at 2171. Defendants argue that claim or issue preclusion may only be asserted against a party or privy to the prior suit but that one need not be a party or privy to assert preclusion. (Defs.' Mot. for Summ. J. (#53) 18:22–19:16). Defendant is correct that identity or privity is only required of the party that *issue* preclusion is asserted against. But there is no such exception for *claim* preclusion. Essentially, anyone may assert issue

///

preclusion against a plaintiff while only a party or privy to the prior action may assert claim preclusion against a plaintiff.

Generally, a claim that arose after the filing of a complaint in a prior proceeding will not be barred by claim preclusion based on the prior proceeding. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) (holding that res judicata does not bar litigation of similar claims based on events that occurred subsequent to a prior judgment); *Carstarphen v. Milsner*, 594 F. Supp. 2d 1201, 1209–11 (D. Nev 2009) (holding that claim preclusion did not bar similar claims that arose from events that occurred after the plaintiff filed his prior complaint); *Havas v. Engebregson*, 633 P.2d 682, 684 (Nev. 1981) ("If the legal malpractice cause of action had not yet accrued, it could not have been included in the first . . . litigation, and it would not be barred by the doctrine of res judicata in the subsequent suit.").

Claim preclusion, however, may bar claims based on later events in some cases. *Carstarphen*, 594 F. Supp. 2d at 1209–10. "[C]laim preclusion extends to claims in existence at the time of the filing of the original complaint in the first lawsuit and any additional claims actually asserted by supplemental pleading." *Id.* at 1210. "Contexts where a second claim depends on the allegation that a series of wrongful acts constituted a single scheme, rather than merely later actions of the same type, are another such example" of claims that arise after filing but are nevertheless barred by claim preclusion. *Id.* This exception covers case where the plaintiff must allege that "all of the predicate acts, *taken together*, *constitute a single course of conduct,*" such as in RICO cases. *Monteray Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Employees & Restaurant Employees Union, AFL-CIO*, 215 F.3d 923, 927–28 (9th Cir. 2000). Thus, a claim for breach of fiduciary duty based on transactions that occurred after the filing of a complaint for the same claim based on similar prior transactions is not barred by claim preclusion. *Carstarphen*, 594 F. Supp. 2d at 1209.[1]

      **a.**       **Claim preclusion bars Plaintiff's due process claims against**

---

[1] Defendants rely on *Kahn v. Morse & Mowbray*, 117 P.3d 227 (Nev. 2005), for the proposition that preclusion doctrines do not depend on whether a cause of action has accrued or not. (Defs.' Mot. for Summ. J. (#53) 26:1–10). *Kahn*, however, only held that issue preclusion may apply even if the second cause of action had not yet accrued during the first. 117 P.3d at 235.

**CEO Silver, UMC, the Board of Trustees, and the Medical Staff.**

Defendants generally argue that all Plaintiff's present claims either were raised before Judge Reed or could have been and are thus barred by claim preclusion. Though Plaintiff alleges claims based on actions that occurred after he filed his prior complaint, all the underlying actions occurred before the close of the case before Judge Reed in November of 2009. Furthermore, almost all the underlying events occurred before Plaintiff's last amendment of his complaint. Plaintiff could have supplemented his claims with these new matters. In addition, Plaintiff essentially complains of the process afforded him by Defendants. This is a case where the wrongful conduct alleged consists of a series of procedural acts. *See Carstarphen*, 594 F. Supp. 2d at 1210. Defendants CEO Silver, the Board of Trustees, UMC, and the Medical Staff were defendants in the prior action. Judge Reed issued a final judgment on the merits in their favor. Therefore, Plaintiff's due process claims against CEO Silver, UMC, the Board of Trustees, and the Medical Staff are barred by claim preclusion.

### 2. Issue preclusion

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim. *Taylor*, 128 S. Ct. at 2171 (quoting *New Hampshire*, 532 U.S. at 748–49). Nevada uses a four-part test to determine whether issue preclusion applies:

> "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; . . . (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation"; and (4) the issue was actually and necessarily litigated.

*Five Star*, 194 P.3d at 713 (footnotes omitted) (quoting *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994)). With federal questions, issue preclusion prevents a party from litigating an issue if four factors are satisfied:

///

///

> (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) (quoting *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000)).

### a. Issue preclusion bars Plaintiff's due process claims against the Doctor Defendants and the MEC.

Defendants argue that issue preclusion bars litigation of Plaintiff's claim for due process violations against the Doctor Defendants. (Defs.' Mot. for Summ. J. (#53) 26:10–18; Def.'s Mot. to Dismiss (#55) 6:21–15). Judge Reed held that the individual doctor defendants did not act under color of state law. Issue preclusion prevents Plaintiff from re-litigating the state-law issue. Plaintiff argues that Judge Reed only held that the individual doctor defendants were not state actors in the specific circumstances before him, not that individual doctors could never be state actors. (Pl.'s Opp'n (#60) 24:4–27). Plaintiff argues that in 2009, the Board of Trustees were more involved with the Medical Staff than in 2008 and that Clark County has paid the legal fees incurred by the Medical Staff and provided the District Attorney's services to the Medical Staff and Chief of Staff Ellerton. (*Id.* at 24:19–25). However, review of the Doctor Defendants' committee recommendations by the Board of Trustees and subsequent aid to the Medical Staff by Clark County does not materially alter the circumstances upon which Judge Reed made his decision. Therefore, issue preclusion bars Plaintiff's § 1983 claims against the Doctor Defendants.

Likewise, the doctrine of issue preclusion and Judge Reed's prior ruling bar Plaintiff from now asserting due process claims against the Medical Staff. The MEC is simply an executive committee within the Medical Staff. Therefore, issue preclusion also bars Plaintiff's due process claims against the MEC. The issue of whether the Doctor Defendants, the Medical Staff, and by implication, the MEC were state actors has already been decided by Judge Reed. The Court is bound to respect Judge Reed's rulings.

///

### C. Plaintiff's remaining state-law claims.

Plaintiff also alleges several state-law claims. "When, as here, the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989). Therefore, the Court dismisses Plaintiff's state-law claims without prejudice.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's Motion to Dismiss (#29) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Renewed Motion to Dismiss (#55) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (#53) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's First and Second claims for declaratory and injunctive relief and for violation of 42 U.S.C. § 1983 are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's remaining claims are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED: This 28th day of September, 2010.

_____
Robert C. Jones
UNITED STATES DISTRICT JUDGE